**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0933-20

HUGO M. PILLACELA
ARIAS,

     Plaintiff-Appellant,

v.

129 LEVITT, LLC,

     Defendant,

and

CARDINAL ESTATES, LLC,
ROSSEN FRAMING, LLC,
BRITO CONSTRUCTION, LLC,
and GMG BRITO
CONTRACTORS, LLC,

     Defendants-Respondents.

_____

Submitted December 8, 2021 – Decided January 6, 2022

Before Judges Hoffman, Whipple, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6750-18.

Ginarte Gallardo Gonzelez Winograd, LLP, attorneys for appellant (John J. Ratkowitz, on the briefs).

Goetz Schenker Blee & Wiederhorn, LLP, attorneys for respondent (David W. Gannon, on the brief).

PER CURIAM

This matter arises from injuries plaintiff sustained while working at a construction site for a new home, 129 Levitt Avenue in Bergenfield. Plaintiff appeals from a Law Division order granting the summary judgment dismissal of his claims against defendant Cardinal Estates, LLC (Cardinal Estates), the general contractor for 129 Levitt Avenue. Plaintiff contends he presented sufficient evidence to withstand defendant's motion for summary judgment. Because a reasonable jury weighing the evidence in plaintiff's favor could determine the existence of facts that would support the determination that Cardinal Estates breached a duty of care owed to plaintiff, we reverse.

I.

We ascertain the following facts from the record, viewed in the light most favorable to plaintiff as the non-moving party. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). Eran Schoulman, the sole member of Cardinal Estates, rented and sold used cars until 2017, when he started

renovating properties and building homes.[1]  129 Levitt Avenue was the third home built by Schoulman.

As the general contractor for 129 Levitt Avenue, Cardinal Estates had only oral contracts with its subcontractors.  On behalf of Cardinal Estates, Schoulman arranged for Rossen Framing, LLC (Rossen) to complete the framing work at 129 Levitt Avenue.  The only terms of the contract between Cardinal Estates and "Alex" (last name unknown),[2] the owner of Rossen, were that Rossen would complete the framing work at 129 Levitt Avenue and Cardinal Estates would pay Rossen.[3]

---

[1]  According to Schoulman, when he entered the construction field he was aware that the Occupational Safety and Health Administration (OSHA) played a role in enforcing safety on construction sites; however, he never completed any OSHA safety courses.

[2]  Schoulman described Alex as Portuguese and acknowledged having difficulty communicating with him "[o]n the phone," but said he spoke "enough [English] to get by" in person.

[3] At Schoulman's deposition, the following colloquy occurred:

> Q. Did you have an agreement with Alex from Rosson Framing about the work he was going to do at 129 Levitt?
>
> A. Verbally, yes.
>
> Q. What was the agreement?

A-0933-20

Relevant to the matter under review, Schoulman admitted he did not know whether Rossen used OSHA-trained workers. In addition, Schoulman was unaware that Rossen subcontracted to other subcontractors the work it verbally agreed to complete. Thus, Schoulman was unaware that Rossen subcontracted the sheathing portion of the framing work to Jaime Castillo, plaintiff's employer. Schoulman maintained that the subcontractors hired to perform the work on 129 Levitt Avenue were responsible for the safety of their workers, notwithstanding the absence of any written contracts with the subcontractors.

Significantly, Schoulman admitted he had no understanding of the obligations of a general contractor under OSHA regulations when plaintiff's accident occurred. Nevertheless, Schoulman stated that if he saw an unsafe condition at the job site, he would "absolutely" have had the authority to correct the condition. While he stated that he visited 129 Levitt Avenue every other day, he could not recall if he saw any workers wearing hard hats or using safety harnesses.

On August 29, 2018, plaintiff reported to work at 129 Levitt Avenue and began working at 9 a.m. Initially, plaintiff secured his ladder by nailing a piece

A. Frame the house . . . [a]nd [you'll] get paid.

of wood on the ground to block his ladder from sliding out from under him. Soon thereafter, one of the workers for the framing subcontractor approached him and asked him to move. After plaintiff moved, the framing subcontractor asked him to relocate a second time, back to where he was initially working. When he returned to his initial location, the wood plaintiff had used to block his ladder from sliding was gone. Plaintiff attempted to secure the ladder by placing a single nail in wood at the base of the ladder; however, when he went up the ladder to take measurements, the ladder shifted, causing him to fall. As a result, plaintiff suffered severe injuries and required spinal fusion surgery.

Plaintiff retained William Mizel (Mizel), a board-certified safety professional, as a liability expert. Over the past thirty years, Mizel conducted over one thousand OSHA-type investigations at various types of facilities. After reviewing the evidence in this case, Mizel concluded that Cardinal Estates acted as the general contractor on the jobsite, Rossen Framing acted as a prime framing contractor; however, neither of these contractors provided any safety oversight. Mizel's report cited the following OSHA regulations, found at 29 C.F.R. 1926.16, as outlining the safety responsibilities of prime and general contractors on construction sites:

> a) The prime contractor and any subcontractors may make their own arrangements with respect to obligations

5

which might be more appropriately treated on a jobsite basis rather than individually. Thus, for example, the prime contractor and his subcontractors may wish to make an express agreement that the prime contractor or one of the subcontractors will provide all required first-aid or toilet facilities, thus relieving the subcontractors from the actual, but not any legal, responsibility. In no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract.

b) By contracting for full performance of a contract subject to section 107 of the Act, the prime contractor assumes all obligations prescribed as employer obligations under the standards contained in this part, whether or not he subcontracts any part of the work.

c) To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility.

d) Where joint responsibility exists, both the prime contractor and his subcontractor or subcontractors, regardless of tier, shall be considered subject to the enforcement provisions of the Act.

[29 C.F.R. 1926.16(a)-(d).]

In his expert report, Mizel explained that under Letters of Interpretation issued by OSHA, a "general contractor normally has responsibility to ensure that

6

the other contractors fulfill their obligations with respect to employee safety which effects the entire site"; in addition, a general contractor shares "responsibility for those violations by its subcontractors which it could reasonably have detected and corrected."  Mizel further noted that, according to OSHA's Multi-Employer Citation Policy, to determine whether a controlling employer like a general or prime contractor exercised reasonable care to prevent and detect violations of OSHA standards on a construction site, OSHA compliance officers inquire about whether a general or prime contractor:

> a. conducted periodic inspections of appropriate frequency . . . . ;
>
> b. implemented an effective system for promptly correcting hazards; and
>
> c. enforce[ed] the other employer's compliance with safety and health requirements with an effective, graduated system of enforcement and follow-up inspection.

Mizel concluded that plaintiff's accident occurred because OSHA safety regulations were violated on the jobsite.  In particular, 29 C.F.R. 1926.1053(b)(6) was not followed, which requires ladders to be used only on a stable, level surface unless secured to prevent displacement.  Further, 29 C.F.R. 1926.1053(b)(7) was violated because ladders must be secured to prevent displacement when placed on a slippery surface.  Finally, because plaintiff and

7

other workers were required to carry sheathing plywood up the ladders they were climbing, ladders on the jobsite were being used in a way that violated 29 C.F.R. 1926.1053(b)(22), which prohibits carrying loads that can cause employees to lose their balance.

Mizel concluded that Cardinal was citable for the ladder safety hazards, as a controlling employer, that resulted in plaintiff's injuries because it did not act with reasonable care as a general contractor when it failed to:

- "conduct proactive safety inspections";

- "implement an effective system for promptly correcting hazards"; and

- "enforce any type of safety requirements related to ladders or fall protection."

Mizel not only evaluated whether OSHA safety regulations were violated and whether Cardinal was citable for those violations, but his report also identified standards adopted by professional organizations that were breached by Cardinal on the construction site.

Plaintiff filed suit in September 2019, naming Cardinal Estates and 129 Levitt, LLC,[4] "the owner/developer of the construction project," as defendants.

---

[4] According to Schoulman, the owner of 129 Levitt Avenue was 129 Levitt, LLC, a company owned by himself and Tal Venture. In November 2019, plaintiff dismissed his complaint against 129 Levitt, LLC.

A-0933-20

Cardinal Estates moved for summary judgment in 2020. On August 31, 2020, the motion judge granted Cardinal's motion, finding there "were no OSHA violations before [the] court to consider" and concluding the evidence did not support imposing a duty of care upon Cardinal. Plaintiff filed a motion for reconsideration, which a different judge denied on September 18, 2020, after the first judge retired.

## II.

### A.

On appeal, we review summary judgment orders de novo, using the same standards applied by the trial courts. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). Rule 4:46-2(c) compels summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." After reviewing the evidence presented "in the light most favorable to the non-moving party," Brill, 142 N.J. at 540, we must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

A-0933-20

one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

The non-moving party bears the burden to present evidence that there is a genuine issue of material fact for trial. Invs. Bank v. Torres, 457 N.J. Super. 53, 64 (App. Div. 2018). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). "[F]acts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious," do not raise a genuine issue of material fact. Brill, 142 N.J. at 529 (quoting Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954)) (internal quotation marks omitted).

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citations omitted). "[T]he question of whether a duty exists is a matter of law properly decided by the court . . . ." Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988).

A-0933-20

B.

The dispositive issue in this case is whether Cardinal Estates, the general contractor on this new-home construction project, owed a duty of care to ensure the safety of plaintiff, an employee of a subcontractor of a subcontractor. Our analysis is guided by the principles adopted by the Court in Alloway v. Bradlees, Inc., 157 N.J. 221 (1999).

A general contractor has an even more comprehensive duty than the property owner to ensure the safety of the employees of any subcontractors working at a construction site. Id. at 232-33. This duty is based on the public policy considerations embodied in the Federal Occupational Safety and Health Act and New Jersey's Construction Safety Act:

> It was obviously the legislative intention to ensure the protection of all of the workers on a construction project, irrespective of the identity or status of their various and several employers, by requiring, either by agreement or by operation of law, the designation of a single repository for the safety of them all.
>
> [Bortz v. Rammel, 151 N.J. Super. 312, 321 (App. Div. 1977).]

That "single repository" is the general contractor, not the property owner. See Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 321 (App. Div. 1996). Any contractor that hires another contractor to perform work on the

11

owner's project will be viewed as the "general" or "prime" contractor for purposes of establishing a duty of care. See Alloway, 157 N.J. at 238. "[G]eneral negligence principles govern the determination of whether a legal duty should be imposed on a contractor for injuries sustained by another contractor's employee." Slack v. Whalen, 327 N.J. Super. 186, 191 (App. Div. 2000) (citation omitted).

A major consideration of the determination of the existence of a duty of reasonable care under negligence principles is the foreseeability of the risk of injury. Alloway, 157 N.J. at 230 (citing Carey v. Lovett, 132 N.J. 44, 57 (1993)). "Foreseeability requires a determination of whether the defendant was reasonably able to ascertain that his allegedly negligent conduct could injure the plaintiff in the manner it ultimately did." Robinson v. Vivirito, 217 N.J. 199, 212 (2014). While foreseeability is the major consideration for imposing a tort duty, the determination of such a duty "involves identifying, weighing, and balancing several factors – the relationship of the parties, the nature of the attendant risks, the opportunity and ability to exercise care, and the public interest in the proposed solution." Alloway, 157 N.J. at 230 (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).

12

The analysis leading to the imposition of a duty of reasonable care is "both fact-specific and principled," and must satisfy "an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Ibid. Determining whether a general contractor owes a duty of care to assure the safety of a subcontractor's employee "necessarily involves consideration of the relevance of statutory and regulatory requirements, more specifically, OSHA regulations, imposed on general or prime contractors relating to the safety of employees of subcontractors at the work site." Id. at 229. Where it is alleged that a contractor violated OSHA regulations, such violation is treated similarly to a violation of an industry standard. Costa v. Gaccione, 408 N.J. Super. 362, 372 (App. Div. 2009) (citation omitted).

Viewing the facts in the light most favorable to the plaintiff, the motion judge erred in granting summary judgment to Cardinal Estates. The judge incorrectly determined that the absence of actual citations by OSHA for violating OSHA regulations ended the inquiry into whether the relevant regulatory scheme favored the imposition of a duty of care upon Cardinal Estates owed to plaintiff. This analysis does not comport with Alloway.

In Alloway, the Supreme Court made clear that, when analyzing whether a general contractor owes a duty of reasonable care to the employee of a

subcontractor, the inquiry "necessarily involves consideration of the relevance of statutory and regulatory requirements, more specifically, OSHA regulations." 157 N.J. at 229. Mizel's report clearly describes that OSHA regulations were violated on the jobsite. In particular, Mizel identifies 29 C.F.R. 1926.1053(b)(6) (requiring ladders to be used only on a stable, level surface unless secured to prevent displacement), 29 C.F.R. 1926.1053(b)(7) (requiring ladders to be secured when used on a slippery surface), and 29 C.F.R. 1926.1053(b)(22) (prohibiting carrying loads that can cause employees to lose their balance). The motion judge failed to consider these relevant regulatory requirements. Had the judge considered these regulatory requirements, summary judgment would have been inappropriate.

Considering the relevant regulatory requirements identified in Mizel's report, plaintiff's injuries were foreseeable to Cardinal Estates. Indeed, plaintiff fell from a ladder, suffering spinal injuries. Mizel identified regulations that aim to prevent falls from ladders. Plaintiff's injuries were therefore foreseeable to defendant after considering the relevant regulatory requirements, as Alloway requires.

Defendant subcontracted the framing work at 129 Levitt Avenue to Rossen Framing, which then subcontracted the work to Jaime Castillo, plaintiff's

A-0933-20

employer. Cardinal Estates contends that it did not know that Rossen Framing had subcontracted work to Jaime Castillo. Defendant conducted all business through oral contracts and there is no convincing evidence that defendant's oral contracts prohibited subcontracting or in any way addressed worker safety.

The nature of the attendant risks were of a type that the relevant OSHA regulations seek to prevent. As outlined by plaintiff's expert, relevant OSHA regulations sought to prevent injuries from an unstable ladder. Plaintiff suffered his injuries when he fell from a ladder that was not secured properly.

Significantly, Schoulman admitted he had the opportunity and ability to exercise control over the construction site at 129 Levitt Avenue. Defendant stated he visited the construction site "every other day." Importantly, defendant agreed that if he saw something unsafe, he "absolutely" had the authority to have the work done in a different way. Accordingly, we find that Cardinal Estates retained sufficient opportunity and ability to exercise control under Alloway.

The final Alloway factor is whether the public interest weighs in favor of imposing a duty on Cardinal Estates. Schoulman, the sole member of Cardinal Estates, worked in real estate before selling used cars. Approximately a year before plaintiff's accident, Schoulman started working as a member of Cardinal Estates building new homes. Becoming a general contractor meant Schoulman

15

filled out a form, paid a fee, and received a general contractor's license. Schoulman took no courses in construction site safety. Nor did he take any steps to educate himself on the relevant OSHA requirements; in fact, he lacked knowledge of relevant OSHA regulations as recently as his deposition.

The public interest is clearly served when construction contractors are charged with knowledge of relevant safety regulations in cases like this one, where the record lacks any credible evidence of any steps taken to protect workers from unsafe working conditions. When contractors and subcontractors are aware of relevant safety regulations, the risks inherent in construction work are minimized for all employees and the public.

Had the court properly considered the relevant OSHA requirements rather than summarily dismissing plaintiff's assertions, summary judgment would have been inappropriate in this case.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0933-20